IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **KRISTYN H.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:18-cv-351 |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**[2]

Plaintiff Kristyn H. ("Kristyn") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Kristyn alleges that the Administrative Law Judge ("ALJ") erred because substantial evidence does not support: (1) the ALJ's determination that Kristyn engaged in substantial gainful activity in 2015; (2) the ALJ's physical RFC findings; (3) the ALJ's assessment of Kristyn's mental impairments under SSR 96-8p; and (4) the ALJ's assessment of Kristyn's credibility.

I agree that the ALJ's assessment of Kristyn's mental impairments is deficient, and thus substantial evidence does not support the ALJ's decision. Accordingly, I **GRANT in part** Kristyn's Motion for Summary Judgment (Dkt. No. 15), **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 17), and **REVERSE AND REMAND** this case for further

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] This case is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Dkt. No. 9.

1

administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Kristyn failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the Court of Appeals remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636; Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Kristyn's mental RFC.

## **CLAIM HISTORY**

Kristyn filed for DIB on September 29, 2014, claiming disability due to degenerative disc disease (DDD), spinal stenosis, arthritis of the thoracic spine, bipolar disorder II with impulsive behavior, depression, and PTSD, with an alleged onset date of September 13, 2011. R. 85. Kristyn was 36 years old when she applied for DIB, making her 32 years old on her alleged onset date. Id. Kristyn's date last insured was June 30, 2018;[4] thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R.18, 207; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Kristyn's application at the initial and reconsideration levels of administrative review. R. 85–115. On March 8, 2017, ALJ Michael Dennard held a hearing to consider Kristyn's claim for DIB. R. 33–84. Counsel represented Kristyn at the hearing, which included testimony from vocational expert Robert Jackson. R. 33. On August 22, 2017, the ALJ entered his decision analyzing Kristyn's claims under the familiar five-step process[5] and denying her claim for DIB. R. 16–27.

The ALJ found that Kristyn had engaged in substantial gainful activity in 2015, and that

---

[4] The ALJ determined that Kristyn engaged in substantial gainful activity in 2015, but because there was a continuous twelve-month period during which Kristyn did not engage in substantial gainful activity, the ALJ made his findings relative to the period she did not engage in that activity. R. 18.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

she met the insured status requirements of the Act through June 30, 2018. R. 18. The ALJ determined that Kristyn suffered from the severe impairments of DDD, obesity, somatoform disorders, affective disorders, and anxiety disorders. Id. The ALJ noted that the record reflected a history of substance abuse with alcohol and cocaine, and treatment for asthma and hypertension, but the ALJ found that these impairments were not severe because they did not impose any significant restrictions on Kristyn's ability to perform basic work activities. R. 19. The ALJ determined that Kristyn's impairments, either individually or in combination, did not meet or medically equal a listed impairment, specifically considering listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar, and related disorders), and 12.07 (somatic symptoms and related disorders). R. 19–21. The ALJ considered the "paragraph B" criteria and determined that they were not satisfied, finding that Kristyn had mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself. R. 19–20. The ALJ determined that the "paragraph C" criteria were also not satisfied. R. 20.

The ALJ concluded that Kristyn retained the residual functional capacity ("RFC") to perform light work. R. 21. For postural limitations, the ALJ determined that Kristyn could frequently balance and climb ramps and stairs, and occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. Id. For environmental limitations, Kristyn could do occasional work at unprotected heights and around moving mechanical parts, occasionally operate a motor vehicle, and have only occasional exposure to extreme cold or vibration. Id. For non-exertional limitations, Kristyn would be limited to performing simple, routine tasks. Id. She could use judgment to make simple work-related decisions, could occasionally respond appropriately to the public and coworkers, and, in dealing with changes in a work setting, would be limited to simple

4

work-related decisions. Id.

The ALJ found that Kristyn was not able to perform her past relevant work as a certified nurse assistant, fast food cashier, or hair stylist. R. 25. Based on Kristyn's age, education, work experience, and RFC, the ALJ determined that Kristyn could perform jobs that exist in significant numbers in the regional and national economies, such as marker and inspector/grader. R. 25–26. Thus, the ALJ concluded that Kristyn was not disabled. R. 26–27. Kristyn appealed the ALJ's decision and the Appeals Council denied her request for review on May 31, 2018. R. 1–7.

## **ANALYSIS**

Kristyn alleges that the ALJ erred because substantial evidence does not support: (1) the ALJ's determination that Kristyn engaged in substantial gainful activity in 2015; (2) the ALJ's physical RFC findings; (3) the ALJ's assessment of Kristyn's mental impairments under SSR 96-8p; and (4) the ALJ's assessment of Kristyn's credibility.

**A. Medical History**

1. <u>Physical Impairments</u>[6]

Prior to her DLI, Kristyn had an anterior cervical diskectomy and fusion in January 2010. R. 59, 1050. A March 2011 MRI showed DDD at L4-L5 and L5-S1, but surgery was not recommended. R. 1048. In August 2012, another MRI showed no changes. R. 996. A September 2014 MRI showed "essentially negative" findings in the thoracic spine, and degenerative facet arthrosis changes at L4-L5 and L5-S1. R. 385. At an August 2016 neurosurgery evaluation, a July 2016 MRI again showed that Kristyn's disks were "essentially normal," but that she did have "some facet arthrosis" and multilevel degenerative lumbar spondylosis. R. 1321, 1896. The

---
[6] A number of other ailments appeared in the record, including COPD, asthma, gastrointestinal issues, glaucoma, carpal tunnel, and shoulder and knee pain, but Kristyn does not allege any error relating to physical ailments not discussed in this section.

5

neurosurgeon recommended physical therapy and weight loss, but not surgery. R. 1321, 1842.

Kristyn regularly received pain medication for conditions she complained of either in the ER or at normal appointments, including for back pain, headaches, stomach pain, shoulder pain, and neck pain. R. 325, 335, 349, 957, 1021, 1023, 1026, 1028, 1044, 1450, 1593, 1616, 1653. Doctors frequently noted that Kristyn exhibited drug-seeking behavior and eventually refused to prescribe narcotic pain medication. R. 920, 922, 931, 933, 996, 1321, 1539, 1576–77, 1601, 1660, 1842, 1895, 1900. After going to the ER in September 2014 for back pain, one doctor even noted, "Patient seems better able to get around when she thinks we are not looking." R. 387. Kristyn also has a history of substance abuse of alcohol, marijuana, and cocaine.

Kristyn saw several primary care doctors from August 2011 to February 2017. Over time, doctors regularly assessed Kristyn with obesity (R. 945, 992, 1019, 1027, 1029, 1032, 1041, 1418, 1589, 1593, 1598) and chronic lower back pain (R. 381, 920, 930, 932, 945, 952, 990, 992, 1019, 1027, 1031–32, 1407, 1449, 1451, 1588, 1593, 1601, 1604, 1616, 1653, 1655, 1669, 1900). They also consistently recommended diet modification, exercise, and weight loss. R. 1027, 1029, 1032, 1042, 1598, 1842. At times, she was referred to physical therapy, but there is no indication she attended therapy sessions and sometimes refused to go. R. 1407. Kristyn also stated that steroid injections and over-the-counter medications did not help with her pain. R. 1449, 1493, 1496, 1842. Kristyn was in a handful of car accidents during the relevant period, after which she complained of back, neck, and head pain, but there were never any acute injuries noted. R. 335, 337, 968–73, 1362. In terms of other physical impairments, Kristyn went to the ER for severe headaches or migraines on a number of occasions spanning the relevant period (R. 293, 358, 1044, 1475), and she was diagnosed with hepatitis C in December 2015. R. 1514–15.

Kristyn testified that she has constant pain across her lower back that radiates into her

legs. R. 54–56. She testified that she was in pain management and was on a fentanyl patch, which helps her to stand, cook, wash dishes, and sweep. R. 57–58. Kristyn testified to not having any problems with her neck following her surgeries. R. 59. Kristyn admitted to having a history of opioid addiction. R. 54. She also testified that she had last used recreational drugs about two months prior to the hearing. R. 68. Kristyn testified that she stopped working because of her constant pain. R. 49–50. She also stopped cutting hair out of her house because she could not handle the standing due to pain, and her hands were going numb from carpal tunnel. R. 47, 59–61. Kristyn also testified to weekly headaches or migraines, and her hepatitis C is in remission. R. 62, 64. Kristyn testified that she watches TV and plays with her dog for fun. R. 68.

2. Mental Impairments

The record shows that Kristyn was on psychiatric medications as early as January 2011. R. 1051. From August 2011 through February 2017, Kristyn was regularly assessed with depression (R. 1041, 1373), panic attacks (R. 1018), anxiety (R. 920, 986, 1373), and bipolar disorder (R. 945, 1373, 1593, 1617), for which she took medication. Kristyn was assessed with major depressive disorder and polysubstance abuse at a February 2013 assessment with Blue Ridge Behavioral Health, where she intermittently received services until November 2014. R. 819–28, 834–42, 847–69. Subsequent evaluations in May and October 2014 assessed polysubstance abuse, major depressive disorder, anxiety, and insomnia. R. 661–715, 720, 732–58. Blue Ridge was frequently unable to contact Kristyn and eventually discharged her. R. 717, 872–73, 894, 884–86, 888–92.

From March 2015 to June 2016, Kristyn received therapy at Family Insight. She was evaluated with major depressive disorder (recurrent, moderate severe) with anxious distress. R. 1218–23. She had mostly normal mental status examinations every three months, but there

were repeated mentions of mood swings and outbursts. R. 1254–58, 1237–39, 1272–75, 1310–13. She was mostly compliant with her medications and attending her appointments. Id. Kristyn was also seen at Walnut Associates for medication management from April 2015 to January 2017. She was evaluated with bipolar depression, PTSD, and a history of opioid dependence. R. 1342–43. Her doctor maintained Kristyn's medication regimen, but the provider reported Kristyn's near-constant mood swings, irritability, anger, and aggressive behavior. R. 1325–41, 1676. Kristyn's mental status exams were mostly normal, in that she had intact memory, fair judgment, and was coherent, alert, and oriented, but at every appointment, she had impaired attention and concentration. Id. Only at her last two appointments did Kristyn begin showing improvement with no impaired attention or concentration. R. 1677–78. Kristyn also attended anger management therapy with a licensed professional counselor from April 2015 to January 2017. Kristyn's mental status examinations were quite varied. While she was usually oriented and had intact memory, her judgment and insight were almost always impaired, and she was frequently depressed, anxious, agitated, and even belligerent. R. 1679–1703, 1708–39.

Kristyn was admitted to the hospital on a number of occasions due to her psychiatric condition. In March 2010, Kristyn was admitted to the hospital for five days for suicidal thoughts and diagnosed with depression and put on medication. R. 289–92, 295. In August 2012, Kristyn attempted a drug overdose and was admitted on a temporary detention order (TDO) to in-patient psychiatric care for six days, during which she was diagnosed with major depressive and anxiety disorders, and possibly bipolar disorder. R. 832–33, 999–1017. She stated at the time that her medications were not effective at controlling her depression. R. 1006. Then, in June 2013, after getting into a car accident while driving under the influence, Kristyn was admitted for having suicidal thoughts, and she had to be restrained because she was uncooperative, verbally abusive,

and spitting at providers. R. 968–73. Kristyn received a resulting DUI charge. R. 67. (There is also some indication that she intentionally drank excessively and then drove a vehicle.) Next, in August 2013, Kristyn again attempted to overdose, and was assessed with bipolar and major depressive disorders, along with cannabis use and possible cocaine dependence. R. 804–18, 900–05, 958–64. She was admitted on another TDO. R. 900. Kristyn presented to Blue Ridge for an evaluation in September 2013 following her release from the hospital. She was diagnosed with major depressive disorder, insomnia, anxiety, and polysubstance dependence, and her medications were increased. R. 791–94. In September 2014, Kristyn again attempted suicide by cutting her wrists and overdosing, and was assessed with depression. R. 933–39. This time, she agreed to be admitted for inpatient psychiatric care. R. 938. Finally, Kristyn had another incident in December 2016. Kristyn went to the ER out of fear that she was dying from a tumor in her throat, but was uncooperative during examination, yelled and cussed at providers, ripped up test results, and eventually had to be escorted off of the premises by police. R. 1669–71, 1825–31. Kristyn was diagnosed with delusional disorder. R. 1669–71.

Kristyn testified that she suffers from PTSD, bipolar, anxiety, and depression. R. 68. She testified that she had to quit employment in 2015 because she was not able to get along with other people. R. 49–50. For example, she threatened to get into altercations with coworkers and supervisors. Id. Kristyn testified to already having been in a number of physical altercations with others. R. 73–76. Consequently, Kristyn avoids other people by remaining in her house. R. 50. She has anxiety being in public, has weekly panic attacks, and is always "on edge." R. 51–52. She testified that her medications do not help her agitation and panic attacks. Id.

3. Medical Opinion Evidence

In December 2014, as part of the state agency's initial disability determination, William

9

Rutherford, Jr., M.D., reviewed the record and determined that Kristyn's severe medically determinable impairments included DDD, somatoform disorders, affective disorders, anxiety disorders, and drug/substance addiction disorders. R. 90. As part of Kristyn's physical RFC evaluation, Dr. Rutherford determined that Kristyn could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit for six hours in an eight-hour workday, with normal breaks; and push or pull without limitation. R. 93. Dr. Rutherford determined that Kristyn's postural limitations included occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes, or scaffolds, and frequent balancing and climbing ramps or stairs. Id. Dr. Rutherford found no manipulative, visual, or communicative limitations. R. 94. For environmental limitations, Dr. Rutherford found that Kristyn would have to avoid concentrated exposure to extreme cold, vibration, and hazards, like machinery and heights. Id. Dr. Rutherford ultimately concluded that Kristyn was capable of light work. R. 98.

Howard S. Leizer, Ph.D., completed a psychiatric review technique assessment for the initial disability determination. In evaluating the "paragraph B" criteria, Dr. Leizer found that Kristyn had mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. R. 91. For his mental RFC evaluation, Dr. Leizer found that, for understanding and memory limitations, Kristyn was moderately limited in her ability to understand and remember detailed instructions. R. 95. Dr. Leizer wrote that Kristyn had very impulsive behavior, difficulty paying attention, and was distracted easily, but she was future-oriented and goal-directed and could perform simple, one- to three-step tasks. Id. He also found sustained concentration and persistence limitations, specifically that Kristyn was moderately limited in her abilities to carry out detailed instructions, maintain attention and concentration for

10

extended periods, and complete a normal workday and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Id. Dr. Leizer again addressed her impulsive behavior, difficulty paying attention, and distraction, but wrote that she could still perform simple, one- to three-step tasks, and she could maintain attention for at least two-hour intervals. Id.

Dr. Leizer also found social interaction limitations, including that Kristyn is moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 96. Dr. Leizer wrote that, in addition to her impulsive behavior, Kristyn gets agitated easily and has trouble getting along with others, and she has manic episodes and can indicate somewhat abnormal behaviors. Id. However, he determined that she can still maintain minimal contact with others. Id. Finally, Dr. Leizer found that Kristyn's adaptation limitations included being moderately limited in her abilities to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. Id. He concluded that Kristyn would have moderate problems with adaptation. Id. In his concluding remarks, Dr. Leizer wrote that the medical evidence indicates that she could perform simple, unskilled, non-stressful tasks on a consistent basis. Id.

As part of Kristyn's request for reconsideration of the state agency's disability determination, Bert Spetzler, M.D., evaluated the records in March 2015. He found the same medically determinable impairments with the same severities as Dr. Rutherford. R. 106. Dr. Spetzler also made the exact same RFC determination as Dr. Rutherford. R. 109–10. Thus, Dr. Spetzler also concluded that Kristyn was capable of light work. R. 114.

Alan D. Entin, Ph.D, ABPP, conducted another psychiatric review technique assessment

for the reconsideration, and made the same findings as Dr. Leizer regarding the "paragraph B" criteria. R. 107. Dr. Entin also found all of the same mental RFC limitations as Dr. Leizer. R. 111–12. Dr. Entin adopted Dr. Leizer's findings that Kristyn would be able to perform simple, one- to three-step tasks; maintain attention for at least two-hour intervals; maintain minimal contact with others; and perform simple, unskilled, non-stressful tasks on a consistent basis. Id.

### B. Mental Impairments Under SSR 96-8P[7]

Kristyn argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8p. Kristyn principally alleges that the ALJ erred in his conclusions regarding Kristyn's social interaction and concentrating, persisting, and maintaining pace conclusions. I do not find these persuasive.

However, in her second assignment of error, Kristyn claims that the ALJ erred in not rendering any findings concerning the severity or functional impact of Kristyn's diagnosis of delusional disorder resulting from the December 2016 emergency room incident. Pl.'s Br. at 23–24, Dkt. No. 16. Additionally, in her fourth assignment of error, Kristyn criticizes the ALJ for finding that her substance abuse disorder was not a severe impairment. Id. at 33. The ALJ determined that Kristyn's substance abuse did not impose any significant restrictions on her ability to perform basic work activities. R. 19. Kristyn argues that the ALJ's conclusion of non-severity is at odds with the considerable amount of evidence documenting Kristyn's substance abuse and, significantly, her several hospitalizations for mental health treatment. Pl.'s Br. at 33. Kristyn concludes that the ALJ's reliance on Kristyn's substance abuse history to find that

---

[7] This was Kristyn's third assignment of error, but I consider it first for the reasons set forth below.

Kristyn's subjective allegations of impairment are not fully supported is erroneous. Id.[8]

While scattered across her assignments of error, Kristyn's arguments lead me to question how the ALJ considered the multiple hospitalizations Kristyn endured as a result of her suicidal thoughts and attempts. Consequently, I find that the ALJ's decision is deficient in its explanation regarding the fourth domain of functioning, adapting and managing oneself.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v.

---

[8] The Commissioner understands, as do I, that this argument regarding Kristyn's substance abuse is more appropriate to analyze as an assertion of error regarding the ALJ's RFC determination. Def.'s Br. at 19–20, Dkt. No. 18.

Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that, without such an explanation, remand was necessary. Id.

While Mascio did not involve the fourth area of functioning that is at issue here, it underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d at 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record). I am perplexed as to how the ALJ found no limitation in Kristyn's ability to adapt or manage herself when, on five to six occasions throughout the relevant period, Kristyn seemed to have been unable to manage her psychologically-based symptoms.

The SSA defines the ability to adapt or manage oneself as follows:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: [r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. pt. 404, subpt. P, app. 1, pt. A2 (effective Aug. 22, 2017 to Mar. 13, 2018). In his decision, the ALJ found that Kristyn had *no limitation* in adapting or managing herself. R. 20. He wrote that Kristyn "is able to dress, bathe herself, and handle money." Id. the ALJ continued:

> Since her alleged onset date, the claimant has worked at more than one job, including self-employment as a hair stylist at a substantial gainful activity level.

> She has been able to obtain housing when necessary, even if in shelters, and obtain medical treatment at her clinic or at the ER.

Id. In his discussion of the medical evidence, the ALJ merely mentioned three of Kristyn's psychiatric hospitalizations, along with Kristyn's December 2016 incident. R. 23. The ALJ later summarily concluded that the "record does not support additional . . . mental limitations," apart from a limitation to simple, routine work with occasional social interaction. R. 24. At no point in his decision, other than in listing the medical records, does the ALJ discuss Kristyn's numerous suicide attempts. Suicidal incidents, and an arrest after a delusional episode, all seem to indicate serious problems with Kristyn's ability to "regulate emotions, control behavior, and maintain well-being," even in a non-work setting. Thus, I am simply left to guess at how the psychiatric hospitalizations factored into the ALJ's calculus regarding Kristyn's mental RFC.

In finding no limitation in this area, the ALJ stated that Kristyn was able to obtain medical treatment when necessary; however, the ALJ fails to recognize that many of her psychiatric hospitalizations involved involuntary TDOs, so Kristyn was unable to leave (even when she tried). The ALJ also mentioned that Kristyn worked at more than one job during the time period, but again fails to recognize that involuntary psychiatric stays would presumably interrupt one's employment entirely. Overall, the ALJ may have a perfectly reasonable explanation as to why he found no limitation in this area of functioning, but, just as in Mascio, this Court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637.

Furthermore, the ALJ later explained that he gave "great weight" to the state agency consultants' mental assessments because their imposed limitations were consistent with Kristyn's "paragraph B" criteria findings and the medical evidence. R. 25. The ALJ concluded, "There is insufficient evidence to support a finding that the claimant would be unable to perform simple, routine tasks with social limitations. Her normal mental status findings and ability to be self-

employed at a skilled job is inconsistent with disabling mental impairments." Id. While the ALJ gave "great weight" to the state psychological consultants' opinions, that alone does not provide a sufficient explanation for his mental RFC determination. At the initial level, the state psychological consultant found that Kristyn had adaptation limitations, specifically that she would be moderately limited in her abilities to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. R. 96. Additionally, while under the umbrella of concentration and persistence limitations, the consultant also found that Kristyn would be moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. R. 95. The state agency consultant at the reconsideration level made the same findings. R. 111–12. The fact that the state psychological consultants found that Kristyn would be able to perform simple, unskilled, non-stressful tasks does not absolve the ALJ of his failure of explanation, especially where they both found that Kristyn would have moderate limitations in adaptation.[9] See Greer v. Colvin, No. 1:14CV00143, 2016 WL 1367745, at *8 (M.D.N.C. Apr. 6, 2016) (finding that giving significant weight to the state agency consultant's opinion that "plaintiff was capable of performing simple tasks" did not adequately explain ALJ's failure to account for plaintiff's moderate difficulties in concentration, persistence, and pace because that same consultant noted that plaintiff "may have

---

[9] The state agency consultants did not find that Kristyn had experienced repeated episodes of decompensation, each of extended duration. R. 91, 107. However, the new "paragraph B" criteria, which applied when the ALJ issued his decision, replaced the repeated episodes of decompensation criterion with "adapting or managing oneself." 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A2 (effective Mar. 27, 2017).

In revising the regulation, the SSA rejected a comment that argued "eliminating 'episodes of decompensation' from the paragraph B criteria will reduce [its] ability to measure the chronic nature and impact of a mental illness." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,137, 66,145 (Sept. 26, 2016). The SSA determined that the SSA's analyses concerning longitudinal evidence, exacerbations and remissions, and the "paragraph C" criteria would adequately encompass the effects of episodes of decompensation. Id. Thus, the SSA does not seem to have intended to eliminate consideration of episodes of decompensation, but instead revised the category to more broadly encompass one's inability to adapt or manage herself.

While Kristyn's hospitalizations likely did not meet the episodes of decompensation parameters (requiring three episodes within one year, each lasting for two weeks), Kristyn's hospitalizations demonstrate her challenges with regulating emotions or controlling behavior. Significantly, those factors are now explicitly included in the new "paragraph B" criteria.

16

some difficulty maintaining attention and concentration") (internal citations omitted).

The ALJ failed to explain why he found no limitation in adapting or managing oneself, even in light of the substantial medical evidence demonstrating Kristyn's suicidal tendencies and inability to manage her psychological symptoms. The ALJ must sufficiently articulate his findings such that the Court can undertake meaningful review, but the Court is unable to review this aspect of the ALJ's decision. Monroe, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence); see also Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (emphasizing the importance of "[r]eaching a decision in a well-reasoned and documented fashion" and admonishing an ALJ to "[s]how your work."). The ALJ may very well conclude again that Laura is not disabled, and perhaps the ALJ can explain why Kristyn has no limitation in adapting or managing herself. However, his failure to explain in this case is reversible error and requires remand.[10] Because I find that remand is warranted based on the ALJ's failure to explain this particular finding, I will not address Kristyn's additional allegations of error. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Kristyn's remaining allegations of error.

---

[10] To be clear, I do not find that the ALJ erred in failing to perform a function-by-function analysis in determining her mental RFC, as Kristyn alleges. Pl.'s Br. at 26. In fact, contrary to Kristyn's assertion, Monroe v. Colvin does not actually require remand if an ALJ fails to perform an explicit function-by-function analysis. 826 F.3d 176, 188 (4th Cir. 2016). Kristyn also incorrectly asserts in her brief that the ALJ found that Kristyn had moderate impairment in concentration, persistence, and pace (the ALJ found only mild impairment). Pl.'s Br. at 26. Finally, Kristyn's attempt to skew the testimony of the vocational expert is not well-taken. Id. at 28–29.

## **CONCLUSION**

It is not the province of this Court to make a disability determination. The Court's role is limited to determining whether substantial evidence supports the Commissioner's decision. In this case, the ALJ failed to satisfy his duty of explanation, and meaningful judicial review is impossible. For the foregoing reasons, I will **GRANT in part** Kristyn's Motion for Summary Judgment, **DENY** the Commissioner's Motion for Summary Judgment, and **REMAND** this matter under sentence four of 42 U.S.C. § 405(g) for additional consideration.

Entered: June 21, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge